105 So.2d 662

### S. L. SMITH

v.

### STATE.

### 8 Div. 389.

Court of Appeals of Alabama.

June 10, 1958.

Rehearing Denied June 24, 1958.

John B. Tally and Scott, Dawson & McGinty, Scottsboro, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

This is an appeal from a judgment of guilt in the Jackson Circuit Court for assault with intent to murder with a sentence of three years penal servitude.

Without the consent of the State, the defendant or his counsel, the jury was allowed to separate at the close of the arguments.

The record shows:

"At the conclusion of the argument of counsel to the Jury:

"The Court: I don't believe I am going to give you the charge this afternoon, Gentlemen. I have quite a few written charges to look over, and it will save time to look over them and to give you the oral charge and the written charges at that time. I don't want to split them up. (Thereupon the jury was instructed and adjourned for the night, with instruction to return to the jury box by nine o'clock next morning.)

"Jury instruction on adjournment as follows:

"The Court: Gentlemen of the Jury, while you are separated for the night the law requires that you neither talk to or communicate with anyone with regard to the facts in this case, nor allow anyone to communicate with you or to discuss the facts of this case in your presence. It would be improper for you to have any contact with any outsider which would in any manner tend to prejudice you either for or against this defendant.

"You will finally try this case upon the testimony heard from the witness stand and the law as I give it to you in my oral charge, and the law says that no outside influence should be permitted to affect you at all.

"I know you want to observe your oaths in this matter, and I am sure you will not let anything happen which

might tend to influence you in this case one way or the other.

"Come back tomorrow morning at nine o'clock promptly and take a seat in the jury box, and I will give you the charge, and we will proceed further with this matter.

"Now, Gentlemen, with that instruction, go ahead and be back in time for court in the morning.

"(Thereupon court adjourned for the night)."

On motion for a new trial all of the jurors testified. The evidence given by George Olen Yates we consider pertinent and here give his entire direct and most of his cross-examination:

"Q. Were you a member of the jury that tried S. L. Smith in the Circuit Court of Jackson County, Alabama, on the 23 and 24 of September, of this year? A. Yes.

"Q. Mr. Yates, I believe on Monday afternoon the jury was allowed to separate and you were allowed to go to your respective homes? A. Yes.

"Q. From the time the jury separated Monday afternoon until court opened on Tuesday did anybody contact you or have any conversation with you concerning the S. L. Smith case? A. No.

"Q. During the trial of the case from the beginning until the jury brought in a verdict, did anybody have any conversation or communicate with you concerning this case? A. No.

"Q. Did anybody contact you or try to influence you in any way? A. No.

*   *   *   *   *   *

"Q. Mr. Yates, you rode home this afternoon with Mr. Lingerfelt? A. Yes.

"Q. And he was on the same jury? A. Yes.

*   *   *   *   *   *

"Q. Your wife rode with you as you went home that afternoon? A. Yes.

"Q. You all discussed what the case was about as you went home? A. No.

"Q. Nothing said about it? A. Not that I remember.

"Q. Don't you remember your wife asking you what the case was about? A. No, she heard the trial and there would have been no occasion for her asking.

"Q. She came to hear the trial? A. Yes.

"Q. And don't you remember you all talked about what the case was about as you went out that afternoon? A. No, we did not discuss the case.

"Q. You and your wife discussed it that night? A. No.

"Q. You didn't talk about what some of the witnesses testified? A. No.

"Q. Nothing was said between you and your wife about that? A. No.

"Q. What did you do that night? A. I did the things that is usual.

"Q. Did you go anywhere that night? A. Yes.

"Q. Where? A. Down to my brother-in-law's.

"Q. Who is he? A. Hubert Wilburn.

"Q. Did you go to look at television? A. Yes.

"Q. That is your wife's brother? A. Yes.

"Q. And when you got down there he and his wife were there? A. Yes.

"Q. Who else was there? A. Several of them. I could not tell you who all.

"Q. Large group of people? A. Ten or twelve.

"Q. Can you name any of them besides you all and your brother and his wife? A. Not offhand. His wife and child is all.

"Q. And what was that gathering that night? A. Just neighbors gathered in.

"Q. To watch television? A. Yes.

"Q. You heard your wife telling them about the trial? A. Yes, somebody asked me about it and I said we have not reached no decision and that is all he said.

"Q. But you overheard your wife talking to the people there about it—she told that group? A. Told them about me being on the case.

"Q. And told them about what the case was about? A. Nobody ever spoke up and said they knew the man even.

"Q. But your wife told them all about what the witnesses had testified? A. No, she didn't. She just told them what case I was on.

"Q. Told them what the case was about? A. Yes.

"Q. And where it happened? A. I would not say whether or not she told them where it happened, but I don't think she knew herself.

"Q. Told them it happened up in a graveyard? A. Yes.

"Q. Graveyard cleaning? A. Yes.

"Q. And the man had testified about getting cut across the neck? A. She explained pretty well to them but I had nothing to do with it.

"Q. Yes, but your wife in your presence explained to the 12 or 15 people there what she had heard testified here that day from the witness stand? A. She talked about it some, yes.

"Q. About what she had heard the witnesses testify? A. I don't know about what she said about what the witnesses said.

"Q. But she told them about the trial? A. She told them about that I was on the jury.

"Q. And about what the evidence was?

"Mr. Black: We object.

"The Court: Overruled.

"Q. She told them about that, what the evidence was? A. No, I don't think so.

"Q. She told them about the man testifying he got cut? A. What it concerned is what she told them.

"Q. And the man that got cut said that Mr. Smith said before they had the fight? A. No, I don't think so.

"Q. But she did tell them about the man testifying? A. No.

"Q. Told about him getting cut? A. Yes.

"Q. And you were there present when she was discussing that with the people there in that home? A. Yes.

"Q. She mentioned the fact that the man that got cut had a rake? A. I don't think so. No.

"Q. And the man was charged with cutting him with a knife? A. She just merely told the outline of the case.

"Q. She outlined the case to them? A. She said something about the case, told them what kind of case we was on.

"Q. She outlined what the case was about? A. About a man getting cut is about all she said."

We consider this testimony on cross-examination shows the State failed to overcome the presumption of injury arising from the proof of separation. Particular-

ly, we advert to Mrs. Yates discussing the case in his presence without Mr. Yates admonishing her not to; this was neglect or disregard of the trial judge's instruction.

King v. State, 266 Ala. 232, 95 So.2d 816, presents a different set of facts—there a single juror was required to leave the group to go (with a deputy sheriff) to a hospital; the deputy isolated the juror from outside contacts. Here, the juror Yates, perhaps due to circumstances beyond his control, allowed discussion of the case in his presence and hearing.

This court individually prefers, as a matter of workability, the rule laid down by way of dictum by Mr. Justice Bouldin in Mitchell v. State, 244 Ala. 503, 14 So.2d 132, which in turn was disapproved by dictum in Wright v. State, 262 Ala. 420, 79 So.2d 74. Indeed, it would be far better to do away with all jury separations in felony cases—regardless of consent. Jury tampering or canvassing is not a lost art. See Wiggins v. State, Ala.App., 104 So.2d 560.[1] Thus, in the King case it occurs to us that the sheriff is (at least nominally) considered to be embodiment of the State in a prosecution; he is allowed to sit with the solicitor throughout a trial without being required to be sequestered if he is a witness.

Be that as it may, in the instant case, we conclude there was (1) a breach of the court's admonition on separation and (2) a failure by the State to show that York was not subjected to influences or contacts which *might* have (consciously or subconsciously) worked upon his mind in deliberating on the case.

This court, per Harwood, P. J., laid down the guiding principle in Wright v. State, 38 Ala.App. 64, 79 So.2d 66, 70:

"It is now the well settled rule in this jurisdiction that a separation of a jury during the trial of a felony creates, prima facie, a cause for reversible error. A separation being shown, the burden is on the State to affirm-

atively establish that the separated juror or jurors were subjected to no influences or contacts that might have influenced their verdict. * * *"

For the denial of the motion for a new trial, the judgment below is reversed and the cause remanded for new trial.

Reversed and remanded.

