Appellant, Bruce Lasley, was indicted on two counts of attempted murder in violation of § 13A-4-2, Code of Alabama 1975. Trial by jury commenced on May 1, 1984. On May 3, 1984, after two days of deliberation, the jury returned verdicts of guilty on the lesser included offenses of assault in the first degree on each count. The trial court sentenced appellant to a term of twenty-two years in the penitentiary on each count, to run concurrently.
The indictments alleged that appellant attempted to intentionally cause the deaths of Terrance Smith, a child of approximately three years of age, and Troy Smith, a child of approximately two years of age, by placing or holding them in scalding water until they were severely burned. The convictions were based solely on circumstantial evidence. Appellant contends on appeal that there was insufficient evidence to support the convictions of first degree assault, and that a new trial should have been granted because of the misconduct of certain jurors in performing experiments during the jury deliberations.
Appellant and Sharon Smith, the victims' mother, had been living together for some time prior to April 24, 1983. Smith was pregnant and had gone into labor in the early morning hours of April 24. Appellant took Smith to the hospital. Terrance and Troy remained at home with two of Smith's younger sisters, Sherline Paula *Page 1259 
Smith, age fourteen, and Samantha Smith, age thirteen. Also present was Nina Smith, age twelve, Sharon Smith's niece.
Sergeant J.D. Fail of the Prichard Police Department testified that on April 24, 1983, he was directed to the University of South Alabama Medical Center in Mobile, where he observed Terrance and Troy Smith. Their feet and legs had been severely burned. Fail directed that appellant be arrested and transported to police headquarters. Upon appellant's arrival at police headquarters, he was informed of his Miranda rights, and subsequently made an oral statement, which was reduced to writing by Fail. Appellant stated that he had taken Smith to the hospital in the early morning hours of April 24, leaving Terrance and Troy at home with the three girls. Appellant returned and the girls departed. He then proceeded to bathe the children in preparation for taking them to their grandmother's home. A "girl" knocked at the door seeking a ride "downtown," and appellant told her he could not take her. When appellant returned to the bathroom, the "shower" was on, "running scalding hot water." Appellant turned the shower off, ran some cold water and went to the bedroom to get the children's clothes. When appellant returned to the bathroom, he noticed "their skin laying off their legs." The children were not "hollering or nothing." Appellant signed the statement on each page. In this statement, upon being asked if he could read and write, appellant acknowledged, "A little bit. Not very much." Fail testified that appellant read the statement and indicated that it was correct before he signed it.
Mrs. Henrietta Smith, the victims' grandmother, testified that appellant brought the children to her home on the way to the emergency room. Appellant told Mrs. Smith that he was "next door" when the children were burned. Appellant later told her that he was lying on the bed and when someone knocked on the door he saw "smoke" coming from the bathroom.
Sherline Paula Smith testified that she, Nina, and Samantha stayed with the victims the night before and the day of the incident. The three girls departed when appellant returned from the hospital. As they were leaving, Terrance and Troy started crying and appellant hit them on the legs with a belt.
Nina Smith stated that Terrance and Troy had been bathed prior to appellant's return. As the girls were leaving, the boys started crying and appellant told them to "get back in this house before I kill you."
Samantha Smith stated that Terrance and Troy had been bathed prior to appellant's return. As the girls were leaving the boys started crying and, according to Samantha, appellant hit them on the legs with a belt and said, "If ya'll don't shut up I'll kill you."
Dr. Max Ramenofsky, a pediatric surgeon at the University of South Alabama Burn Center, examined the burns suffered by Terrance and Troy. Dr. Ramenofsky used a burn chart, developed by the American Burn Association, to describe the extent of the injuries suffered by Terrance and Troy. Both victims received immersion burns, which resulted in extensive skin loss on the back side of the legs and soles of the feet. The burns stopped at the thigh. There was no evidence of "splash burns," which would have resulted from scalding water emitting from the shower, under "normal shower conditions."
According to Ramenofsky, if the children had made no effort to get out of water hot enough to burn them, such would be "quite inconsistent" with generally accepted scientific knowledge on pediatric trauma. Ramenofsky's examination of Terrance and Troy revealed that they had the personality types of children who had been physically and emotionally abused and neglected. Both were severely malnourished upon admission to the hospital.
At the close of the State's case, the defense moved to exclude the State's evidence. The trial court denied this motion.
The defense offered the testimony of Dr. Leroy Riddick, of the Alabama Department of Forensic Sciences, who had examined the victims and requested additional information on the tub, contents, depth of water, *Page 1260 
and other data from the Prichard Police Department. This information was never obtained. Riddick stated that he was "highly suspicious of child abuse" being the cause of the burns sustained by Terrance and Troy.
Ms. Jennifer Weed, a social worker with the University of South Alabama Medical Center Burn Unit, conducted a social assessment of Terrance and Troy while they were in the burn unit. This assessment indicated that the children were slow to interact, slightly depressed, had no reactions to stimuli, and did not verbalize.
Appellant testified in his own behalf. According to appellant, he and Sharon Smith departed for the hospital at 3:00 to 3:30 a.m., leaving Terrance, Troy, Sherline, Nina, and Samantha at home. When appellant returned, the girls departed. Appellant stated that Terrance and Troy were "not clean" and needed a bath before he took them to their grandmother's house. Appellant "ran" four to five inches of water in the tub and placed the boys in the water. Terrance was standing in the water and Troy was sitting, "but he got up." Appellant testified that after he put the children in the tub, Terrance had "cut the shower on." Appellant turned it off and told "them" not to mess with it. While he was looking for clothes, Geraldine Pugh, a neighbor, knocked at the door and asked appellant to take her downtown to get her "old man out of jail." Appellant stated that it took fifteen to twenty minutes for him to convince Pugh that he could not take her downtown. When appellant returned to the bathroom, he heard the water running and saw steam coming from the room. Water was coming from the faucet (not the shower) and the tub was full of water. Terrance was standing in the back of the tub and Troy was "stooping" in the front of the tub. The children were not crying, but they were "whimpering."
Appellant stated that he did not get mad when the girls left and he did not hit Terrance and Troy with a belt. According to appellant, he spanked the children only in their mother's presence.
On cross-examination, appellant stated that he told the police the same version of facts that he testified to at trial, but they "wrote it down wrong." Appellant maintained that he never read the statement transcribed by Fail.
 I
In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the State.Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979), and we must review evidence before the trial court at the time the motion was made. Thomasv. State, 363 So.2d 1020 (Ala.Cr.App. 1978). "A conviction may be had on evidence which is entirely circumstantial, so long as that evidence is so strong and cogent as to show defendant's guilt to a moral certainty." Tanner v. State, 291 Ala. 70, 71,277 So.2d 885, 886 (1973). See also, Williams v. State,468 So.2d 99 (Ala. 1985). "The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." Cumbo, 368 So.2d at 874. See also, Jones v. State, 481 So.2d 1183 (Ala.Cr.App. 1985).
We have carefully reviewed the facts of this case and find that there was sufficient evidence from which the jury might have excluded every reasonable hypothesis except that of guilt beyond a reasonable doubt on the offenses of assault in the first degree. The trial court properly charged the jury on the elements of assault in the first degree as that offense is defined by § 13A-6-20(a)(1), which states:
 "(a) A person commits the crime of assault in the first degree if:
 "(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument. . . ."
Appellant does not challenge the State's evidence as to the element of "serious *Page 1261 
physical injury" inflicted on Terrance and Troy, nor the fact that scalding hot water can be defined as a "dangerous instrument." The State clearly proved these elements. Appellant contends that there is insufficient evidence to establish that he intended to cause the injuries suffered by the children.
At the close of the State's case, the jury had before them three somewhat different versions from appellant as to what transpired while Terrance and Troy were in the bathtub. There was also the testimony of Samantha, Nina, and Sherline as to what transpired as they were leaving, and the fact that Terrance and Troy had been bathed prior to appellant's arrival. There was, additionally, the testimony of Dr. Ramenofsky, who established that splash burns were not present on the children; that they would "normally" have tried to exit the tub when the water got hot; and that they had personality types consistent with that of "physically and emotionally abused" children. Although there was no direct evidence that appellant inflicted the immersion burns on Terrance and Troy, we believe there was sufficient circumstantial evidence from which the jury could have excluded every reasonable hypothesis except that appellant committed the acts charged beyond a reasonable doubt.
 II
Appellant next contends that the trial court abused its discretion in denying his motion for a new trial based upon admitted juror misconduct in performing home experiments. At the hearing held on appellant's motion for a new trial, all twelve jurors were called before the court and each testified. The evidence adduced at this hearing established that during the two and one-half days in which the jury deliberated, at least three jurors conducted home experiments to test the heat intensity of tap water. The most extensive experiment was conducted by Foreperson Plank, who made a record of her findings, which was introduced into evidence at the hearing. Plank's experiment consisted of filling an empty bathtub with water from the hot water faucet only. Plank recorded the temperature of the water at various levels in the tub, as well as the time between each recording. Plank then compared her findings to the burn chart data introduced through Dr. Ramenofsky. According to Plank, "we were concerned about whether water could heat up fast enough if the child turned it on." The other jurors stated that they had known of Plank's experiment during their deliberations because she had told them.
Juror Harrison also conducted an experiment of a similar nature at his home. Harrison told the others about his experiment and discussed it with Plank while other jurors were present.
Juror Peabody also admitted to conducting a water experiment at home; however, we do not know the extent of her experiment, nor with whom she discussed it. All the jurors, however, were aware that at least two home experiments were conducted.
It is clearly the law in this state "that jurors should consider only the evidence presented at trial." Troha v. State,462 So.2d 953, 954 (Ala. 1984). Our courts have held that any independent inquiry or experiment by a juror about the evidence violates the juror's duty to limit his consideration to the evidence, arguments, and law presented in open court. SeeGilliland v. State, 266 Ala. 24, 93 So.2d 745 (1957); Bolt v.State, 428 So.2d 1369 (Ala.Cr.App. 1982), cert. denied,428 So.2d 1371 (Ala. 1983); White v. State, 380 So.2d 348
(Ala.Cr.App. 1980); Arrington v. State, 23 Ala. App. 201,123 So. 99 (1929); Thames v. State, 21 Ala. App. 526, 109 So. 612
(1926); Nix v. City of Andalusia, 21 Ala. App. 439, 109 So. 182
(1926).
In Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932), it was held:
 "The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered." *Page 1262 
This standard was recently reaffirmed in Troha, 462 So.2d at 954. It is not, however, every instance of juror misconduct which requires reversal. It must be shown that some new fact, prejudicial to the defendant, was discovered by the experiment and influenced the jury in its deliberations. See generally,Troha; Bolt; White; Smith v. State, 35 Ala. App. 501,105 So.2d 662 (1958). "Each case of alleged improper conduct must be judged by its own particular facts." White, 380 So.2d at 351.
In the case at bar, error did occur when the jurors conducted home experiments to test the heat intensity of common tap water.
Having determined that misconduct did in fact occur, we now must determine whether the misconduct might have unlawfully influenced the jury's verdict, thus resulting in prejudice to appellant.
In the case at bar, each juror testified that, although he or she knew about the home experiments, such knowledge did not "influence" his or her decision in any way. Foreperson Plank stated that "I considered it in — yes, in discussion. I took it into account"; however, she "could not" consider the experiment in arriving at her verdict because "[t]his was my own evidence and I couldn't feel that it could be considered in the final vote." Plank's testimony establishes that she conducted this experiment to test the validity of appellant's story. Evidently, the experiment persuaded Plank that appellant's version of the facts was plausible; however, she could not convince the remaining jurors and therefore based her verdict on the evidence presented at trial. We believe that Plank's experiment established that the children could have turned on the hot water tap and thereby caused the scalding. Had the jury considered this extraneous evidence, they may possibly have acquitted appellant. There is no evidence which indicates bias or corruption of the jurors who conducted the home experiments. Clearly, there is nothing in the record which indicates that the jurors' conduct adversely affected the verdict.
The experiments appear to have been beneficial to appellant's position at trial and, therefore, we cannot say that as a matter of law prejudice can be presumed. There is nothing in the record to suggest that these experiments "might have" influenced the jury in a prejudicial manner; in fact, the record indicates the contrary. These experiments were obviously rejected by the jury and the verdict was based upon the evidence properly presented at trial. In the absence of a showing that some new extraneous fact harmful to appellant was presented by the experiments, which might have influenced the jury, the actions by the jurors would not require the granting of a new trial. The jury here was obviously not influenced by the extraneous matters. No evidence was presented from which the trial judge could have presumed that, without exposure to the extraneous facts, the jury would have voted differently.
Appellant's contention that Plank's use of a law book at home to aid her in understanding the element of intent resulted in reversible error is equally without merit. The court properly instructed the jury on the element of intent on at least two occasions. Plank stated that she followed the law as explained by the trial court in its oral instructions.
For the above reasons, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a new trial based on juror misconduct. However, we want it clearly understood that we do not condone the actions of the jurors in this case. We condemn this type of conduct strongly.
 III
Appellant filed a motion with this court on May 30, 1986, requesting leave to file an additional brief, which was granted. Appellant raises one additional issue therein. He contends that his constitutional rights were violated by the State's systematic exclusion of blacks from the jury by the use of its peremptory challenges. Appellant contends thatBatson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), controls the disposition of this cause. We disagree and find no merit in *Page 1263 
this contention. The record establishes that the State exercised seven of its eight peremptory challenges to strike blacks from the jury venire. No other facts or circumstances concerning the jury striking procedure appear in the record. We are not apprised of the total number of blacks on the venire, or the number remaining on the jury which tried the case. Appellant's motion to strike the venire, which appears in the record, states that the State's strikes were an "attempt" to strike all blacks, implying that blacks were left on the jury. There is insufficient factual information presented in the record to support a prima facie case of systematic exclusion even if we were to apply the Batson rationale to the facts of this cause.
We merely hold that there was insufficient evidence to raise an inference that the State's strikes were intended to purposely exclude members of the black race from the jury because of their race, and that the trial judge was not in error when he denied appellant's motion to strike the venire. We do not apply Batson here, but even if we did, we would find no error, as there was insufficient evidence before the trial judge to raise an inference of purposeful discrimination.
Based on the foregoing, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.