518 So.2d 1264 (1986)
Linda Jo EBENS
v.
STATE.
8 Div. 251.
Court of Criminal Appeals of Alabama.
July 15, 1986.
On Return to Remand September 9, 1986.
Rehearing Denied October 14, 1986.
Certiorari Quashed January 8, 1988.
*1265 Jerry Knight and Travis W. Hardwick of Hardwick, Knight & Haddock, Decatur, for appellant.
Charles A. Graddick, Atty. Gen., and J. Elizabeth Kellum, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-103.
PATTERSON, Judge.
Appellant, Linda Jo Ebens, was indicted by the January 1983 term of the Morgan County Grand Jury charging her with manslaughter in connection with the death of Rodney Wayne Day. A jury found appellant guilty of manslaughter as charged in the indictment. The trial court subsequently sentenced appellant to a term of ten years in the state penitentiary. Five issues are raised on appeal.
The State's evidence tended to establish that Rodney Day and Tammy Jo Day were married about two to three weeks before the incident. Rodney and Tammy, ages sixteen and seventeen, respectively, were both unemployed and had moved into the home of appellant and her husband, Jim Ebens. Tammy was appellant's daughter. According to the witnesses presented at trial, there were no problems between any of the family members prior to the shooting, and Rodney would help appellant with work around the house.
On December 6, 1982, Rodney and Jim had gone fishing. Upon their return, they stopped at an Omelet Shoppe, where Jim was reported to have "unzipped a waitress's blouse." Rodney told Tammy of the incident and Tammy wanted to tell her mother. Rodney was concerned that Jim would "be mad at him," so Tammy devised a method to get this information to her mother without implicating Rodney.
Tammy persuaded her younger sister, Ann Marie Kitchens, to tell appellant the following day that she heard at school what had happened at the Omelet Shoppe. On December 7, 1982, Ann Marie met her mother, who was visiting her grandmother, who lived next door, and asked to speak with her mother privately. Appellant had planned to pick up Rodney and Tammy about that same time, so she took Ann Marie with her. En route, Ann Marie told her mother that she had heard at school a story about Jim unzipping the waitress's dress.
*1266 Appellant immediately confronted Rodney with these facts and Rodney initially denied such an event occurred. Rodney then admitted that he had told Tammy what had happened. Ann Marie confessed that she had not heard the story at school. Appellant stated that she would confront Jim about the incident. Rodney was concerned that Jim would be "mad at him," so Tammy suggested that appellant "hold a gun" on him to make it appear that appellant was forcing Rodney to tell the truth.
Appellant and Ann Marie went home to confront Jim. Rodney and Tammy waited at the grandmother's home next door. In order to protect Rodney, Ann Marie told Jim that she heard the story at school. Jim stated that he had reached up and touched a waitress's zipper, but had not unzipped anything. Appellant sent Ann Marie after Tammy and Rodney. According to Ann Marie, they were all "laughing and cutting up" upon their return to the house.
Appellant obtained a shotgun that was kept behind the television set. According to Ann Marie and Jim, who were called to testify by the State, and appellant, who testified in her own behalf, appellant was holding the gun toward the floor and her fingers were away from the trigger. Appellant then asked Rodney if Jim had unzipped the waitress's blouse. Jim approached appellant from behind and yelled, "No" and "Rodney, you tell the truth," or similar words to that effect. When Jim yelled, appellant appeared startled and as she turned, the gun fired and Rodney fell. Appellant attempted to stop the bleeding and aided Rodney until paramedics arrived. According to medical testimony, Rodney died as a result of the gunshot wound in the chest.
Officer Thomas Patterson of the Decatur Police Department obtained a statement from appellant shortly after the shooting on December 7, 1982. Proper Miranda warnings were given. The statement was written by Patterson and each page was signed by appellant after it was read to her and read by her.
Appellant's statement was substantially the same as outlined by the above testimony except for the following inconsistencies. In the statement, appellant stated, "I asked Rodney if he wanted me to hold a gun on him, and he said that he didn't care." She also explained that, when she confronted Rodney at home in Jim's presence, "I then asked Rodney if Jim had unzipped a girl's blouse, while he had been at the Omelet Shoppe. Rodney said No. I then started to raise the shotgun in toward Rodney and it went off."
Brent Wheeler, a criminalist with the Department of Forensic Sciences, testified that he tested the shotgun found at the scene. There were no defects in the weapon. According to Wheeler, the gun could, and would, fire only when the hammer was pulled back in the cocked position. The shotgun had an internal safety mechanism, which prevented the hammer from making contact with the firing pin while the hammer was in the forward (uncocked) position. Thus, the weapon would not discharge unless the hammer had been pulled back into the cocked position.
Appellant's testimony at trial was as set forth above. She said she did not remember making the statements read by Patterson. Appellant stated that she was very upset when she talked with the police, because they would not reveal Rodney's condition. According to appellant, she had never fired the shotgun before and her hands were well away from the trigger when it fired. Appellant was aware that the gun was kept loaded and was not left cocked.

I
During the trial of this case, a juror informed the court that she had been contacted by telephone during the evening recess. The court called the juror and questioned her as follows:
"THE COURT: You reported to the bailiff that you had a phone call last night?
"JUROR: Yes, sir.
"THE COURT: Do you know who the call was from for sure?
"JUROR: Yes. It was a friend of mine, but the personthere is a person in the back that's observing the trial, and he *1267 made sure that it got back to my friend, and she called me and told me that he was a stepbrother of the deceased, and they justthey wanted to let me know, and he saidwell, my friend told me also that one of the girls that were in there yesterday, see, I thought she was observing, I didn't know she was kin to them, and they even told me that she was going to be on the witness stand today.
"THE COURT: Is that about all that was said?
"JUROR: That's about all.
"THE COURT: Do you think what was said to you would influence your decision in this case in any manner to any degree?
"JUROR: No, sir, I don't.
"THE COURT: You can just put that out of your mind and not consider it?
"JUROR: Yes, sir.
"THE COURT: Do y'all have any questions for her?
"MR. HARDWICK [defense counsel]: I don't, Judge.
"THE COURT: Let the record show that the attorneys for the defendant are in chambers and the assistant district attorney is in chambers and the defendant is in chambers with the juror. All right. Any questions?
"MR. KNIGHT [defense counsel]: No.
"THE COURT: All right. That will be all."
Appellant contends that the extra-judicial telephone call amounted to juror misconduct and, thus, that the trial court erred in denying his motion for mistrial on that ground.
It is clearly the law in this state "that jurors should consider only evidence presented at trial." Troha v. State, 462 So.2d 953, 954 (Ala.1984). Any communication or contact outside the jury room about the matters at trial between a juror and another person is forbidden where that contact "might have unlawfully influenced that juror." Id. See also, Roan v. State, 225 Ala. 428, 143 So. 454 (1932); Smith v. State, 39 Ala.App. 501, 105 So.2d 662, cert. denied, 268 Ala. 694, 105 So.2d 666 (1958).
In Roan, 225 Ala. at 435, 143 So. at 460, it was held:
"The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered."
This standard was recently reaffirmed in Troha, 462 So.2d at 954. See also, Lasley v. State, 505 So.2d 1257 (Ala.Cr.App.1986). It is not, however, every instance of juror misconduct which requires reversal. See Lasley, 505 So.2d at 1261-62. "Each case of alleged improper conduct must be judged by its own particular facts." White v. State, 380 So.2d 348, 351 (Ala.Cr.App. 1980).
We fail to see how appellant might have been prejudiced in this instance by the extra-judicial statements made to the juror by the juror's friend. Appellant argues that this communication during trial "negates the purpose sought to be served by voir dire examination of the venire panel." We find no question posed on voir dire which would have brought this information to light had the juror known of this situation in advance.
Although we do not condone the act of the juror's friend in calling the juror, we find absolutely nothing of a prejudicial nature disclosed by the remarks. We also note that the juror was questioned by the trial court and stated that the information would not influence her decision and that she could put the information out of her mind and not consider it. It is also noteworthy that the juror informed the trial court of the call of her own volition. Moreover, defense counsel evidently found no implication of prejudice, since they chose not to pursue the alleged misconduct, as indicated by their declination to question the juror. Based on the juror's testimony, the trial court concluded that appellant was not prejudiced by the remarks.
"Thus, where the trial court investigates the circumstances under which the remark was made, its substance, and determines that the rights of appellant were *1268 not prejudiced by the remark, reversible error will not be found absent a clear showing of an abuse of that discretion."
Bascom v. State, 344 So.2d 218, 222 (Ala.Cr.App.1977), and cases cited therein. We find no abuse here.

II
During the court's instructions to the jury, the court noted that the crime charged carried a one- to ten-year prison sentence. The court further charged the jury that they were not to concern themselves with the penalty to be imposed because such matters were solely for the court to determine after a sentencing hearing and investigation. No objections were made to these instructions. At the sentencing phase of the proceeding, the court imposed the mandatory ten-year term required by § 13A-5-6(a)(5) because a firearm was used in the commission of this felony. Appellant, citing several civil cases, contends that the judge's instruction pertaining to the range of sentence became the "law of the case," and the State was estopped from insisting upon the application of § 13A-5-6(a)(5) because the prosecution failed to object to the sentencing instruction. See Hood v. Ham, 342 So.2d 1317 (Ala.1977); W.T. Ratliff, Inc. v. Purvis, 292 Ala. 171, 291 So.2d 289 (1974); Tombrello v. McGhee, 282 Ala. 408, 211 So.2d 900 (1968); Golson v. Butts, 348 So. 2d 1065 (Ala.Civ.App.1977).
In the case at bar, the trial court is responsible for determining the penalty to be assessed after the jury returns a guilty verdict. The jury was clearly instructed that they were not to consider punishment in their deliberations because this was solely for the court to determine. We find no merit to appellant's contention that the court's oral charge became the "law of the case" as it pertained to the sentencing phase of the proceedings.

III
Appellant contends that there was insufficient evidence to establish that Rodney Day was dead; or if Rodney Day was dead, the cause of death. There is no merit to this contention. These facts were sufficiently established by the testimony of Dr. Josefino C. Aquilar.

IV
The jury, during its deliberations, notified the court that they desired further instructions on the differences between manslaughter and criminally negligent homicide. The court informed the jury that they would have to wait, and to continue deliberations with his previous instructions until he could address their questions. He was conducting a voir dire examination of a jury venire in preparation for another unrelated trial. The jury returned a verdict before the judge could address their questions. Each juror was polled and affirmed that the verdict returned was his or her individual verdict.
It is clearly the law that the jury "at all times has access to the trial court for legal instruction." Tillison v. State, 32 Ala.App. 397, 398, 27 So.2d 41, 42, cert. denied, 248 Ala. 196, 27 So.2d 46 (1946). See also cases collected at Ala. Digest, Criminal Law, Key No. 863(1). In the case at bar, the jury was informed that they would receive additional instructions, but that they would have to wait until the judge finished what he was doing. The jury was not denied access to the court; they could have waited a short time for further instructions if they deemed it necessary. The jury chose to proceed under the court's prior charge and was obviously able to reach a unanimous verdict. We find no error in the trial court's failure to address the jury's question under the circumstances of this case in light of the fact that they chose to continue deliberations and reached a unanimous verdict without additional instructions.

V
Appellant contends that the trial court committed reversible error in omitting the allocution at the sentencing hearing. The recorded transcript of the proceeding affirmatively reveals that no allocution was conducted, although the judgment entry indicates that such was given.
*1269 In Alabama, the courts have clearly held that in a felony conviction, the court must ask the defendant if he has anything to say as to why the sentence of the law should not be imposed on him. See Junior v. State, 411 So.2d 850 (Ala.Cr.App.1982); Ala.Digest, Criminal Law, Key No. 989, and cases cited therein. The judgment is therefore erroneous, absent a proper allocution, and the cause subject to remandment for proper sentencing. McGuff v. State, 49 Ala.App. 88, 268 So.2d 868, cert. denied, 289 Ala. 746, 268 So.2d 877 (1972). See also, Thomas v. State, 280 Ala. 109, 190 So.2d 542 (1966) (omission of allocution does not affect judgment of conviction).
The State argues that the judgment entry establishes that an allocution did, in fact, occur. "It is well established that recitals in the judgment entry import absolute verity unless contradicted by other portions of the record." Jones v. State, 373 So.2d 1221 (Ala.Cr.App.), cert. denied, 373 So.2d 1225 (Ala.1979), overruled on other grounds, Ex parte Wilcox, 401 So.2d 794 (Ala.1981). While we do not disregard this judgment entry, we find that there exists a conflict between the transcript and the judgment entry. We are also aware that there is no authority which gives a court reporter's stenographic notes a conclusive presumption of accuracy or which prevents their contents from being impeached or contradicted. O'Leary v. State, 417 So.2d 217 (Ala.1981), cert. denied, 463 U.S. 1206, 103 S.Ct. 3536, 77 L.Ed.2d 1389 (1983). The transcript merely provides an indication that a conflict does exist.
Due to the apparent conflict between the judgment entry and the transcript of the sentencing proceeding, we remand this cause to the trial court with directions to resolve the conflict and determine if a proper allocution did in fact occur. If there was no allocution, the trial court is directed to conduct a new sentencing hearing in which a proper allocution is provided. The trial court should then make due return to this court.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
On remand, the circuit court resentenced Linda Jo Ebens to ten years in the penitentiary. The sentence was proper and included the allocution as directed by this court.
All issues raised on appeal having been addressed, and no reversible error found, this cause is due to be and it is hereby, affirmed.
AFFIRMED.
All Judges concur.