The appellant, Homer Gene Dawson, was convicted of four counts of distributing a controlled substance, a violation of § 13A-12-211, Code of Alabama 1975. He was sentenced to concurrent terms of 35 years in the state penitentiary.
The state's evidence tended to show that on February 16 and 18, 1993, the appellant sold controlled substances to Wanda Gray, an undercover police officer, at an apartment complex in Florence. Two officers with the Florence Police Department "staked out" the scene and listened to the transaction inside the apartment by way of a microphone. The appellant's direct appeal and appeal from his petition for post-conviction relief have been combined for purposes of appeal to this court.
 I
The appellant first contends that the trial court erred in denying his petition for post-conviction relief filed pursuant to Rule 32, Ala.R.Crim.P., in which he contended that he was denied a fair and impartial jury because of juror misconduct.
The appellant filed a post-conviction petition after he discovered that a member of the jury, J.C., visited the scene of the crime after the trial court had admonished the jury to consider only the evidence presented from the witness stand. This juror testified at the hearing on the petition that after deliberations *Page 469 
had begun he went to the scene of the crime to decide for himself if the officer's testimony was accurate regarding the lighting conditions in the area. The officer had testified that, while he was watching the house, he saw the appellant at the front door. J.C. testified that he visited the scene to determine whether the officer could actually identify the appellant from his location.
Another juror, J. B., testified that during deliberations, J.C. explained to the other members of the jury that, in his opinion, the officer could not have identified the appellant because of the poor lighting in the area. J.B. then stated that the information furnished by J.C. did not affect his verdict.
The test to be applied in determining whether juror misconduct mandates a new trial is "not that [the misconduct] did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered."
This case is governed by the Alabama Supreme Court's decision in Ex parte Lasley, 505 So.2d 1263 (Ala. 1987). In Lasley, the Alabama Supreme Court discussed, in depth, the standard used to evaluate this type of juror misconduct. The court stated:
 "There is no doubt that the home experiments constituted juror misconduct. The only question is whether the misconduct requires a new trial. The standard for determining whether juror misconduct requires a new trial is set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932).
 " 'The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered.' (Emphasis added in Lasley.)
 "The Roan test mandates reversal when juror misconduct might have influenced the verdict. This test casts a 'light burden' on the defendant. Ex parte Troha, 462 So.2d 953 (Ala. 1984).
 "Application of the rule cannot in all cases depend entirely upon the jurors' statements that the extraneous information did not affect their verdict.
 "The integrity of the factfinding process is the heart and soul of our judicial system. Judicial control of the jury's knowledge of the case is fundamental. Our rules of evidence are designed, so far as humanly possible, to produce the truth and to exclude from the jury those facts and objects which tend to prejudice and confuse. Evidence presented must be subject to cross-examination and rebuttal. The defendant's constitutional rights of confrontation, of cross-examination, and of counsel are at stake.
 "The Court of Criminal Appeals reasoned that some of the results of the experiments were beneficial to the Petitioner. Yet the court stated that with regard to juror Peabody's experiment, '[H]owever, we do not know the extent of her experiment, nor with whom she discussed it.'
 "Considering three separate home experiments and the consultation of law books by one juror, we conclude that the jury might have been influenced, notwithstanding the jurors' statements to the contrary. The jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced."
505 So.2d at 1264. See also Reed v. State, 547 So.2d 596
(Ala. 1989); Bascom v. State, 344 So.2d 218 (Ala.Cr.App. 1977).
Here, J.C. and J.B. both stated that their verdicts were not affected by the information. However, we have a situation similar to the situation in Lasley, in which we are not persuaded by the jurors' statements. As the Court stated inLasley, the juror's conduct impeached the "integrity of the factfinding process", which is "the heart and soul of our judicial system." 505 So.2d at 1264. We must consider the attitude of the juror who decided to become a private investigator of the facts of this case, in total and direct disregard of the orders of the court. What other orders and directions and instructions of the court might the juror have deliberately violated? The extraneous information, even *Page 470 
if we believe the juror's statement, "might have affected" the jurors' verdict. For this reason, the appellant is entitled to a new trial and the trial court erred in denying appellant's petition for post-conviction relief.
In the interest of judicial economy we will address the remaining issue, because it may arise in subsequent proceedings.
 II
The appellant contends that he was denied his right to a speedy trial as guaranteed by the United States Constitution and the Constitution of the State of Alabama. Specifically, the appellant contends that the trial court abused its discretion by denying his motion to dismiss the indictment and his motion for a new trial because, he says, he was denied his right to a speedy trial. The chronological events governing this issue are as follows:
 August 2, 1993: The appellant was indicted on four counts of the distribution of a controlled substance.
 February 14, 1995: The appellant was arrested and was released on bond.
 March 15, 1995: An alias warrant was issued against the appellant after he failed to appear at a hearing.
 March 16, 1995: The appellant entered a written plea of not guilty. The trial was initially set for April 17, 1995; a pre-trial conference was to be held on April 12, 1995.
 March 17, 1995: The appellant filed a motion to dismiss the indictment based on "unreasonable delay" and his constitutional right to a speedy trial.
 April 12, 1995: Trial of the case was continued to May 22, 1995.
 May 12, 1995: The motion to dismiss the indictment was heard and denied.
 June 16, 1995: The appellant pleaded not guilty and the case was set for trial on August 14, 1995, with a pre-trial conference to be held on August 9, 1995.
 August 9, 1995: The appellant failed to appear at the pre-trial conference and an alias warrant was issued.
 August 23, 1995: The trial of this case was continued to September 11, 1995, with a pre-trial conference to be held on September 6, 1995.
 August 24, 1995: The trial of the case was again continued to October 16, 1995, with a pre-trial conference to be held on October 11, 1995.
 October 13, 1995: The appellant filed a second motion to dismiss the indictment. October 16, 1995: The trial commenced.
The appellant makes two distinct arguments concerning his contention that his right to a speedy trial was violated. The appellant first contends that his right to a speedy trial was violated because he was not arrested until approximately 17 months after he was indicted.
The Alabama Supreme Court in Ex parte Clopton, 656 So.2d 1243
(Ala. 1995), reversed this court's holding that a defendant had not been denied a speedy trial, when there was a three-year delay between the return of the indictment and arrest. The Court stated the following:
 "The factors to be considered in determining whether a delay violates the right to a speedy trial are '1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial, and 4) prejudice to the defendant resulting from the delay.' Ex parte Carrell, 565 So.2d 104, 105 (Ala. 1990), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). A single factor is not necessarily determinative, because this is a 'balancing test, in which the conduct of both the prosecution and the defense are weighed.' Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)."
The Alabama Supreme Court in Clopton held that based on the record, the inaction of the state resulted from negligence and weighed heavily against the state. Here, there is absolutely nothing in the record that suggests the delay was the result of neglect or inaction by the State.
At the hearing on the motion, the evidence showed that the State made a good-faith effort to discover the whereabouts of the appellant after he was indicted. The appellant testified that from August 1993 until the date of the trial, he lived in or around Lauderdale, *Page 471 
Colbert, and Franklin Counties. The appellant testified that he had no permanent residence and that he moved around quite frequently and that on several occasions he left the area for approximately 50 days at a time to work on a barge.
In 1994, the appellant returned from barge work, was arrested for driving under the influence (DUI), and was scheduled to appear in Colbert County in June 1994. He failed to appear. He also did not appear for his DUI trial, which was scheduled for July 1994.
Two months after the appellant was indicted, the assistant district attorney in charge of investigating the case contacted David Scoggin, an investigator with the Lauderdale County district attorney's office, to have him arrest the appellant. Scoggin testified that on five occasions he went to the appellant's last known address. He testified that the first time he left a business card taped to the front door with the following note written on the back: "Homer, give me a call."
Scoggin further testified that he talked with law enforcement personnel in Colbert County, who informed him about the appellant's court date scheduled in June 1994 and the trial date scheduled for July 1994. Scoggin stated that he planned to arrest the appellant at that time; however, the appellant did not appear for court. Scoggin also stated that he made several attempts to locate the appellant by calling other jails in the surrounding area, but was not successful until he located the appellant in the Sheffield municipal jail. At this point, he was arrested by a detainer being lodged against him.
The appellant has failed to show how the State denied him his right to a speedy trial. The delay in arresting the appellant was the result of the appellant's own actions not the State's inaction.
The appellant further contends that the 26-month delay from indictment to trial denied him his right to a speedy trial. We must consider the length of the delay, the reason for the delay, the assertion of the appellant's right to a speedy trial, and any prejudice to the appellant. Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In Hayes v.State, 487 So.2d 987, 991 (Ala.Cr.App. 1986), this Court held:
 "The protection of the Sixth Amendment is triggered when a criminal prosecution has begun and extends only to those person who have been 'accused' in the course of that prosecution. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). '[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.' Id. at 320, 92 S.Ct. at 463."
As this court further stated in Howard v. State,678 So.2d 302, 304 (Ala.Cr.App. 1996):
 " 'Unless the length of time between the commencement of the prosecution and the trial is presumptively prejudicial, it is unnecessary to consider the other Barker factors.' Zumbado[v. State, 615 So.2d 1223 (Ala.Cr.App. 1993)] at 1234. In this case, the length of time between the issuance of the arrest warrant, in April 1992, and the trial, in September 1994, was roughly 29 months. See Vincent v. State, 607 So.2d 1290
(Ala.Cr.App. 1992) (time from appellant's arrest to his trial was 31 months and thus lengthy enough to trigger an inquiry into the remaining factors.)"
The delay of 26 months here is sufficient to trigger an inquiry into the remaining Barker factors.
The reasons for the delay are detailed above. "Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker." Walker v.State, 386 So.2d 762, 763 (Ala.Cr.App.), cert. denied,386 So.2d 765 (Ala. 1980).
As to the appellant's assertion of his right to a speedy trial, the appellant filed a motion to dismiss the indictment four weeks after he was arrested. The appellant was tried within seven months after making this motion.
The appellant contends that when the first three prongs of the Barker test have been met, the element of prejudice to the defendant *Page 472 
is "totally irrelevant." He cites as authority the case ofEx parte Carrell, 565 So.2d 104 (Ala. 1990). See also Turner v.Estelle, 515 F.2d 853 (5th Cir. 1975); and Hayes, supra.
The Alabama Supreme Court in Carrell, 565 So.2d at 108 stated: "[W]here the delay is excessive and is the result of unexcused inaction by the State, the delay is prima facie prejudicial." The appellant has not shown that the delay was excessive or that it was the result of unexcused inaction by the State. The record shows that the delay was not caused by neglect or inaction by the State. The trial court did not abuse its discretion in denying the appellant's motion to dismiss the indictment and in denying the motion for a new trial on this ground.
For the reasons discussed in Part I of this opinion, the judgment is reversed and the case remanded to the Circuit Court for Lauderdale County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.