On October 17, 1995, a jury convicted Homer Gene Dawson on four counts of distributing a controlled substance in violation of § 13A-12-211, Ala. Code 1975. Dawson was sentenced as a habitual offender to 35 years' imprisonment on each count, the sentences to run concurrently. On May 22, 1996, Dawson petitioned for post-conviction relief under Rule 32, Ala. R.Crim. P., alleging that juror misconduct had deprived him of a fair trial. The trial court denied the petition, concluding that if any unfair prejudice resulted from the juror misconduct it was to the prosecution, not the defense. Dawson appealed. The Court of Criminal Appeals reversed and remanded for a new trial; a juror had improperly viewed the crime scene, and the Court of Criminal Appeals held that that misconduct might have affected the jury's verdict. Dawson v. State, 710 So.2d 467
(Ala.Crim.App. 1996). We granted the state's petition for certiorari review. We now reverse the judgment of the Court of Criminal Appeals and remand the case for action consistent with this opinion.[1]
At trial, Wanda Gray, an undercover agent of the Colbert County Drug Task Force, testified that she met with Dawson on February 16 and 18, 1993, at an apartment complex in Florence. Gray stated that at those two meetings, which she said lasted at least 30 minutes each, Dawson sold controlled substances to her. While these drug transactions occurred, two officers of the Florence Police Department "staked out" the scene in a van in a lot across the street from the complex. Using hidden microphones, the stake-out officers were able to hear and record conversations occurring inside the apartment; an audiotape of those conversations was played for the jury. The two stake-out officers admitted that they could not see Dawson and Gray during the meetings, but one of those officers, Jim Staggs, did testify that on February 18, the date of the second transaction, from the point where he had parked his vehicle he saw Dawson leave the apartment, enter a vehicle, and drive out of the complex.
After Dawson was convicted and sentenced, his attorney became aware that juror misconduct might have occurred in the case; he petitioned for post-conviction relief. At the hearing on the petition, juror L.C. admitted that after the jury had retired for deliberations he had, without court authorization, gone to the apartment complex where the drug transactions had allegedly occurred. L.C. also confirmed that he had tried to park his automobile in the same location where the police stake-out vehicle would have been parked, in order to determine whether there *Page 474 
would have been sufficient light to enable Officer Staggs to identify Dawson leaving the apartment on February 18, as Officer Staggs had claimed he had done. L.C. did not testify as to what conclusions he might have drawn from viewing the scene and said he could not recall whether he had made comments on the subject to his fellow jurors. L.C. did affirmatively state, though, that his improper visit did not influence his decision in the case.
P.B., the jury foreman, stated, however, that juror L.C. had in fact told the other jurors about his viewing of the crime scene. P.B. testified that during deliberations L.C. explained to the other jurors that he had visited the scene and that L.C. expressed to them the opinion that Officer Staggs's location would not have permitted him to see the apartment door so as to be able to identify Dawson. P.B. also stated that L.C.'s remarks did not affect her verdict.
The sole issue presented to this Court for review is whether the Court of Criminal Appeals erred in reversing Dawson's conviction and remanding this case for a new trial based upon juror L.C.'s unauthorized viewing of the crime scene and his sharing with other jurors the information he gathered as a result.
It is undisputed that L.C.'s viewing of the scene violated the trial court's admonition to consider only the evidence presented at trial and that it constituted juror misconduct. However, not every instance of juror misconduct warrants a new trial. Reed v. State, 547 So.2d 596 (Ala. 1989). "Each case involving juror misconduct must be judged by its own peculiar facts, and the conduct, when found to be prejudicial, will require a reversal." Id. at 597, citing Bell v. State, 227 Ala. 254,256, 149 So. 687, 689 (1933). The standard for determining whether juror-misconduct is prejudicial to the defendant in a criminal case and, thus, requires a new trial is set forth inRoan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932):
 "The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered."
The state concedes that the Roan test is applicable to the juror-misconduct issue in this case. However, the state contends that the trial court correctly determined that no unfair prejudice against Dawson could have resulted from L.C.'s improper viewing of the crime scene. The state argues that the stake-out officer's identification of Dawson was not crucial to the outcome of the case, and that, in any event, the evidence indicated that L.C. was persuaded from his visit to the scene that the officer could not have identified Dawson from his location. Thus, the state claims, the extraneous information in this case could only be beneficial to the defense. We agree that the juror misconduct in this case does not warrant the granting of a new trial.
In reversing Dawson's conviction, the Court of Criminal Appeals found Ex parte Lasley, 505 So.2d 1263 (Ala. 1987), to be controlling. In that case, the defendant was charged with assault for causing severe burns to two young boys by placing or holding them in a bathtub of scalding water. The defendant testified that while he was giving the children a bath he had been distracted by a knock at the door. He alleged that the children turned on the hot water faucet themselves and that he returned later to find them in the scalding water. To assess the credibility of the defendant's version of events, at least three jurors separately conducted their own home experiments, filling their bathtubs with hot water to test how quickly the water temperature would increase. At least some of the experiments seemed to support the defendant's position at trial. One juror also consulted law books to aid her understanding of the element of intent. Despite this misconduct, the jurors expressly testified that their verdict was not influenced by any of the extraneous information. Id. at 1264.
After the Court of Criminal Appeals affirmed Lasley's conviction, Lasley v. State, 505 So.2d 1257 (Ala.Cr.App. 1986), this Court reversed and ordered a new trial, despite the fact that the jurors testified that they had not been influenced and the fact that at least *Page 475 
some of the jurors' home experiments appeared to be favorable to the defense. Ex parte Lasley, 505 So.2d at 1264. As to the results of the experiments, this Court acknowledged that at least some of the results appeared to support the defense theory, but the Court also specifically noted that the Court of Criminal Appeals had stated that the record did not reveal the extent of one juror's experiment, nor the persons with whom the juror had discussed it. Id. We further held that jurors' testimony denying that their verdict was improperly influenced is not always conclusive on the issue of prejudice:
 "Application of the rule [that a new trial is required where juror misconduct might have influenced the verdict] cannot in all cases depend entirely upon the jurors' statements that the extraneous information did not affect their verdict.
". . . .
 "Considering three separate home experiments and the consultation of law books by one juror, we conclude that the jury might have been influenced, notwithstanding the jurors' statements to the contrary. The jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced."
Id.
In its opinion in this present case, the Court of Criminal Appeals stated:
 "[W]e have a situation similar to the situation in Lasley, in which we are not persuaded by the jurors' statements. . . . We must consider the attitude of the juror who decided to become a private investigator of the facts of this case, in total and direct disregard of the orders of the court. What other orders and directions and instructions of the court might the juror have deliberately violated? The extraneous information, even if we believe the juror's statement, 'might have affected' the jurors' verdict."
Dawson v. State, supra, 710 So.2d at 469-70.
It could appear from these statements that the Court of Criminal Appeals found that, because one juror disobeyed the trial judge's instructions, other instances of juror misconduct, not proven and not even alleged, might be inferred to support the argument that a new trial was required. However, "[a]t a hearing on a motion for a new trial, the defendant has the burden of proving the allegations of his motion to the satisfaction of the trial court." Miles v. State,624 So.2d 700, 703 (Ala.Cr.App. 1993), citing Anderson v. State,46 Ala. App. 546, 547, 245 So.2d 832, 833 (1971), and Jones v.State, 31 Ala. App. 504, 507, 19 So.2d 81, 84 (1944). Thus, a defendant seeking a new trial on the basis of juror misconduct has the initial burden to prove that a juror or jurors did in fact commit the alleged misconduct.
Ex parte Lasley is distinguishable from Dawson's case. Exparte Lasley does stand for the proposition that some kinds of juror misconduct in criminal cases may allow a court to presume prejudice as a matter of law, notwithstanding the fact that jurors deny that any actual prejudice resulted from exposure to extraneous matters. However, presumption of prejudice as a matter of law has generally been restricted to cases in which the jury's consideration of the extraneous facts was "crucial in resolving a key material issue in the case." See Hallmark v.Allison, 451 So.2d 270, 271 (Ala. 1984); Ex parte Thomas,666 So.2d 855 (Ala. 1995); see also Pearson v. Fomby, 688 So.2d 239
(Ala. 1997). In Lasley, jurors conducted the experiments to test the viability of the defense's version of principal events; thus, prejudice might be presumed and that prejudice would warrant a new trial. Here, however, the question whether Officer Staggs was able to identify Dawson from his stake-out position was relatively minor, given that Agent Wanda Gray, the undercover agent who conducted the two face-to-face drug transaction meetings inside the apartment, had already positively identified Dawson. Further, it appears that the jury did not regard Officer Staggs's corroborating identification as crucial to its decision. The jury returned a conviction notwithstanding the fact that juror L.C. said he did not believe an identification would have been possible from the officer's stake-out location; this leads us *Page 476 
to the final substantial difference between this case andEx parte Lasley.
In both Lasley and this case, the prosecution argued that the extraneous information considered by jurors could only have benefited the defense, and, therefore, that the prejudice required to justify the granting of a new trial did not exist. However, whereas in Lasley the Court noted that "we do not know the extent of [one juror's] experiment, nor with whom she discussed it," Ex parte Lasley, 505 So.2d at 1264, quotingLasley v. State, 505 So.2d at 1261, the record in this present case discloses more completely the substance of the juror's improper actions and what he said to the other jurors. Given the ambiguous impact in Lasley of the one juror's experiment regarding a "key material issue in the case," a new trial was warranted. See also Ex parte Troha, 462 So.2d 953 (Ala. 1984) (a new trial was required where a juror asked his brother, a minister, for spiritual guidance and biblical references to aid his decision in the case). But here, the evidence reveals that the conclusions reached by juror L.C. from his improper viewing and later communicated to the jury could only serve to undercut the credibility of Officer Staggs, a prosecution witness. Thus, no prejudice to the defendant could have resulted from the extraneous information.
We find this case to be more analogous to Reed v. State,547 So.2d 596 (Ala. 1989). In Reed, a police officer identified the defendant as the person he had purchased cocaine from. Another officer corroborated that identification, testifying that he had observed the transaction, which occurred at night, through the tinted windows of a van. One juror testified that after the jury began deliberations she returned home that night and looked out the tinted windows of her van to see if she could see out as the officer had testified he had done. She further testified that the results of her experiment were consistent with the officer's testimony, but that she told the other jurors of her experiment only after the guilty verdict was returned. In reversing the judgment of the Court of Criminal Appeals, this Court held that a new trial was not warranted where the trial court had properly investigated the misconduct and had determined that the juror's verdict had not been influenced by the experiment. Reed, 547 So.2d at 598.
In both Reed and this present case, the trial court investigated juror misconduct, which involved corroborating a police identification of a defendant, and found that the extraneous matters did not prejudice the defendant. In Reed, a new trial was not required even where the juror's unauthorized experiment produced results that were consistent with the officer's identification testimony. Here, the information learned by the unauthorized viewing — information suggesting that the officer would have been unable to identify Dawson — was inconsistent with the officer's testimony in this case; this distinction between this case and Reed reinforces the conclusion that no prejudice could have resulted to Dawson and that a new trial is not required.
Because Dawson failed to show that the juror's viewing of the crime scene resulted in the introduction of facts that might have unlawfully influenced the jury's verdict, a new trial is not warranted.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
[1] The Court of Criminal Appeals' opinion addressed both Dawson's direct appeal from the convictions and his appeal from the denial of his Rule 32 petition. The Court of Criminal Appeals' judgment of reversal was based on an issue raised on the appeal from the denial of the Rule 32 petition. This certiorari review, based on the state's petition, addresses only the issue that the reversal was based on. We further note that the Court of Criminal Appeals' judgment reversed Dawson's convictions on all four counts, even though the juror misconduct seems to have been directly related to only two of those counts.