Appellant, Edward Charles Scott, was indicted by a Talladega County grand jury for burglary in the first degree, a violation of § 13A-7-5, Code of Alabama 1975. Appellant was found guilty by a jury of the offense of burglary in the second degree and was sentenced pursuant to the Habitual Felony Offender Act to a term of life imprisonment.
The facts in the case are as follows: At approximately 4:00 a.m., on August 6, 1987, the victim, T.B., was awakened when a man she later identified as the appellant entered her bedroom with a knife and put his hand around her throat and demanded that she "pull his clothes off" or he would kill her. When the victim refused, a struggle ensued in which the victim was able to "grab" the knife while appellant was attempting to choke the victim with both of his hands. When appellant saw the victim had his knife, he ran out of the victim's house. The victim then chased appellant outside, threatening to kill him. When the victim realized she could not catch appellant, she returned home and called the police.
Lieutenant Eugene Jacks of the Talladega Police Department investigated the incident in the early morning hours of August 6, 1987. Lieutenant Jacks found fingerprints on a window screen which had been removed from the children's bedroom window area. These prints were later found not to be legible for comparison purposes. No one witnessed the incident, although a neighbor of the victim saw two unidentified people "scuffling" in the alley near his *Page 814 
home. Another neighbor was awakened by the cries of the victim's children, who were seen in the front yard of the victim's home as the mother approached the children from another direction. A cap, identified as belonging to appellant, was found in the children's bedroom.
Based on these facts, appellant was arrested on August 7, 1987, and he was later tried and convicted. Appellant now appeals his conviction, raising two issues.
 I
Appellant's first contention is that the trial court erred by denying his motion for judgment of acquittal on the indicted charge of first degree burglary and in submitting, for the jury's consideration, the offense of second degree burglary. He argues that second degree burglary is not a lesser included offense, but that first degree and second degree burglary are "two distinct and separate offenses" and that the prosecution should not have been allowed "to select a crime to conform to the evidence."
As a preliminary matter, we note that the record reveals that all parties were "satisfied" with the trial court's instructions to the jury, and we acknowledge that any error with regard to jury charges is waived where a party fails to make a timely objection. See Cannon v. State, 518 So.2d 872
(Ala.Cr.App. 1987); A.R.Cr.P. Temp. 14. However, since jurisdiction of the trial court, in felony cases, rests upon the utilization of a grand jury indictment or information which encompasses the charge for which the defendant is convicted, we reach the merits of appellant's claim as a jurisdictional matter. See Ross v. State, 529 So.2d 1074 (Ala.Cr.App. 1988).
The first degree burglary statute, § 13A-7-5, reads in pertinent part, as follows:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon. . . ."
The second degree burglary statute, § 13A-7-6, provides in pertinent part the following:
 "(a) A person commits the crime of burglary in the second degree if he knowingly enters or remains unlawfully in a building with intent to commit theft or a felony therein and, if in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument.
 "(b) In the alternative to subsection (a) of this section, a person commits the crime of burglary in the second degree if he unlawfully enters a lawfully occupied dwelling-house with intent to commit a theft or a felony therein."
We find it important to note that the 1978 Alabama legislature amended the second degree burglary statute by adding subsection (b), in an attempt to reinstate a modified form of Alabama's old second degree burglary offense. See Ala. Code § 13A-7-5 through § 13A-7-7 (1975), Commentary. The Commentary following the burglary statutes states the following:
 "To convict under this new subsection, it apparently will be necessary that some person other than the defendant was physically present in the dwelling the precise moment it was unlawfully entered, a technical requirement that has been abrogated by the other Criminal Code sections covering burglary. It is not clear whether 'dwelling-house' as used under this additional subsection means 'dwelling,' as defined under [§ 13A-7-1(3)], or only a house in the traditional sense. Also, it is not certain that 2nd degree burglary when based upon this subsection (§ 13A-7-6), is a *Page 815 
lesser included offense of first degree burglary."
For second degree burglary to be classified as a lesser included offense of first degree burglary, the offense must meet the definitional requirements of § 13A-1-9, which states in pertinent part:
 "(a) A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
 "(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
 "(3) It is specifically designated by statute as a lesser degree of the offense charged; or
 "(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission.
 "(b) The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
The record shows that, in instructing the jury on second degree burglary as a lesser included offense of first degree burglary, the trial court instructed on only subsection (b) of § 13A-7-6, the alternative to subsection (a). Subsection (b) requires that there be an unlawful entry into a "lawfully occupied dwelling-house" with the intent to commit a theft or felony. The requirement that the "dwelling-house" be "lawfully occupied"[1] under subsection (b) appears to constitute an additional element which must be proven in order to support a conviction, for lawful occupation is not an element required under § 13A-7-5, first degree burglary. This difference appears on its face to preclude second degree burglary defined by §13A-7-6(b) from being an included offense of first degree burglary, since it can be established only by a showing of facts not required in order to be convicted of § 13A-7-5.
However, the Alabama Supreme Court in Ex parte Jordan,486 So.2d 485 (Ala. 1986), stated that when analyzing statutes for the purpose of determining lesser included offenses, it is important not to look at the statutes in abstract terms, but rather to take into account the specific facts in each case as well as the indictment under which the accused was charged. Id.
at 488. Our supreme court proposed a test in applying §13A-1-9(a)(1) which, when tailored to the facts in the instant case, can be stated as follows: Can all or fewer than all of the facts establishing the commission of first degree burglary under § 13A-7-5(a)(1) also establish the commission of burglary in the second degree under § 13A-7-6(b)?
In the present case, the indictment reads as follows:
 ". . . Edward Charles Scott . . . did, knowingly and unlawfully enter or remain unlawfully in a dwelling of [T.B.] . . ., intent to commit a crime therein, to-wit: Rape, said dwelling being occupied at the time by [T.B.], a person lodged therein, and while affecting entry or while in the dwelling or in immediate flight therefrom, the said defendant . . . was armed with a deadly weapon, to-wit: a knife, in violation of § 13A-7-5. . .".
The record reveals that the victim was sleeping in her home when she was awakened by appellant, who had a kitchen knife in one hand while his other hand was around the victim's throat. Appellant then ordered the victim to "pull [the appellant's] clothes off." The facts necessary to prove the allegations of the indictment clearly establish the commission of first degree burglary under § 13A-7-5(a)(1) and second degree burglary under § 13A-7-6(b). Thus, pursuant to § 13A-1-9(a)(1), in this case, under this indictment, second degree *Page 816 
burglary, as defined by § 13A-7-6(b), is a lesser included offense of the charged offense.
We hold that, under § 13A-1-9 and the rationale found in Exparte Jordan, and given the unique facts and literal reading of the indictment in the present case, subsection (b) is, underthese facts, considered a lesser included offense of first degree burglary as stated in appellant's indictment. We acknowledge, however, that, under different sets of facts, §13A-7-6(b) would not qualify as a lesser included offense to burglary in the first degree; this court is not declaring that burglary in the second degree under § 13A-7-6(b) is always a lesser included offense of first degree burglary under §13A-7-5(a)(1).
We further acknowledge that we are mindful of the recent decision of the United States Supreme Court in Schmuck v.United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734
(1989). In Schmuck, the Court rejected the "evidence" or "inherent relationship" test for determining whether, under F.R.Crim.P. 31(c), one offense is included in another, and adopted instead the "traditional" or "elements approach" to the determination of what is a lesser included offense. "Under this test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." Id. at 716,109 S.Ct. at 1450. Although the federal rule analyzed in Schmuck is somewhat comparable to our § 13A-1-9 (both being adopted from the Model Penal Code), our supreme court has not chosen to adopt the analysis of Schmuck. We concede that, under the Schmuck
reasoning, our holding in the present case would differ. However, despite some dissatisfaction with the current state of the law governing included offenses, see Miller v. State,565 So.2d 275 (Ala.Cr.App. 1989) (Bowen, J., specially concurring), cert. granted, [88-1325, October 26, 1989], we are bound by the decisions of the Alabama Supreme Court and possess no authority to overrule decisions of that court. See Hampton v. State,455 So.2d 149 (Ala.Cr.App. 1984).
Therefore, we find that the trial court properly instructed on the second degree burglary charge. Furthermore, we find that, since the jury found appellant guilty of second degree burglary, we need not concern ourselves with the trial court's ruling on the motion for judgment of acquittal in regard to the first degree offense.
 II
Appellant next contends that the delay of 19 months between his arrest and his trial violated his Sixth Amendment right to a speedy trial. A chronological listing of the events[2] pertinent to this issue follows:
 August 6, 1987: The crime occurs in the early morning hours.
 August 7, 1987: An affidavit and complaint are issued in the Talladega District Court, charging appellant with first degree burglary. Appellant is arrested.
 September 1, 1987: Attorney Giddens is appointed as appellant's counsel.
 October 15, 1987: Attorney Giddens is allowed to withdraw as appellant's counsel after Giddens accepted a position with the local district attorney's office.
 November (day not revealed), 1987: Attorney Willingham is appointed as appellant's counsel.
 January 5, 1988: The case is continued for a preliminary hearing.
 October 21, 1988: Appellant files a pro se motion for a "speedy trial and/or final disposition."
 December 5, 1988: After a preliminary hearing (the record does not reveal the date), appellant is indicted by the grand jury.
 January 5, 1989: Appellant is arraigned and pleads not guilty to the charge.
 January 12, 1989: Appellant files several motions in the circuit court. *Page 817 
 January 30, 1988: Case comes up for trial, but is continued. This continuance is not at defense counsel's request but appears to be grounded upon the district attorney's illness. This jury trial term is the first since appellant's indictment.
 Week of February 27, 1989: Appellant moves for a continuance when his case comes up during the second scheduled jury term since indictment.
 March 22, 1989: Appellant is tried and found guilty by a jury of second degree burglary.
Appellant's claim that he was denied his right to a speedy trial is to be reviewed by the standards set forth inBarker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972). Such a review is actually "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Id. at 530, 92 S.Ct. at 2191-92. The following factors must be assessed: (1) the length of the delay, (2) the appellant's assertion of his right, (3) the reasons for the delay, and (4) any prejudice to appellant. Id.
Length of Delay:
Appellant's right to a speedy trial was triggered by his arrest on August 7, 1987. United States v. Marion,404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Hayes v. State,487 So.2d 987, 991 (Ala.Cr.App. 1986). The length of delay between the arrest and the trial was over 19 months.
Reason for Delay:
At a pretrial hearing, the assistant district attorney cited to the trial court several reasons for the delay. One of the reasons was procurement of legal counsel for appellant. This process was not final until November 1987. Another was appellant's apparent desire for a preliminary hearing, which did not take place until sometime after January 5, 1988. Another delay was due to the Talladega County Circuit Court's not conducting any jury trials in the month of December 1988 and the difficulty of trying appellant during the January term because of the district attorney's illness and a backlog of over 300 pending cases. In regard to this latter consideration, the district attorney explained that, because of overcrowding in the county jail, cases of inmates in the county jail were given priority over state-housed inmates and that, because appellant was a state inmate at the time, his case did not have top priority in the January term. Finally, the delay after appellant's case came up at the second term after his indictment is attributed to defense counsel, who moved for and was granted a continuance. The following month, appellant's trial ensued.
After a careful review of the record, we find no indication that the delays were due to any intentional or deliberate acts by the prosecution. Although it appears that the state possibly could have caused appellant's case to proceed along more swiftly, this court is not in a position to make such judgments, for we are confined solely to the information in the record before us. See Cade v. State, 521 So.2d 80, 85
(Ala.Cr.App. 1986); Lewis v. State, 426 So.2d 932, 937
(Ala.Cr.App. 1982), cert. denied, 426 So.2d 938 (1983). Moreover, such inaction by the State can, at most, be labeled "negligent inaction," which is considered a neutral reason for delay and is to be weighed less heavily against the State than deliberate delay. See McLemore v. State, 562 So.2d 639
(Ala.Cr.App. 1989); Harper v. State, 420 So.2d 835, 839
(Ala.Cr.App. 1982). See also Barker v. Wingo, 407 U.S. 514 at 531, 92 S.Ct. at 2192 (1972).
Assertion of Right:
Appellant did not assert his right to a speedy trial until 14 months after his arrest. Although the fact that appellant did assert his right weighs in his favor, Barker,407 U.S. at 531-32, 92 S.Ct. at 2192-93, Wilson v. State, 407 So.2d 584,588 (Ala.Cr.App. 1981), the fact that 14 months of the 19-month delay occurred before appellant ever asserted his right discounts the significance to be accorded the assertion. SeeMcLemore v. State and cases cited therein.
Prejudice:
The record shows that appellant was incarcerated for the entire 19 months between his arrest and his trial. In regard to this incarceration, we adopt the following from Lewis v. State,469 So.2d 1291, 1295-96 *Page 818 
(Ala.Cr.App. 1984) (18-month pretrial incarceration): "While we acknowledge the disadvantage to any accused who is incarcerated for [this many] months prior to trial, as pointed out inBarker, 407 U.S. at 532-33 . . ., 92 S.Ct. at 2192-2193, we do not believe [appellant] has shown substantial prejudice."
Appellant claims that because one defense witness had moved to the State of Georgia and because prosecutorial witness Ola Scott was no longer valuable to him because she could not remember facts, stating "that's been a long time ago," he has suffered prejudice. We disagree. These assertions were not presented to the trial court during the hearing on appellant's motion, and the record does not offer any evidence to support appellant's claim of substantial prejudice. After interviewing the Georgia witness during a recess of the trial, appellant's counsel informed the trial court that the witness could not offer any beneficial testimony for appellant and, therefore, that there was no need to subpoena the witness.
In regard to the second witness, we note the following:
 "Although ordinarily a mere assertion of a loss of memory is not enough of a showing of prejudice to support a finding that a defendant has been denied due process, where the delay is excessive and is the result of unexcused inaction by the State, the delay is prima facie prejudicial. Murray v. Wainwright, 450 F.2d 465 (5th Cir. 1971); United States ex rel. Solomon v. Mancusi, 412 F.2d 88 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969)."
Ex parte Carrell, 565 So.2d 104 (Ala. 1990). Here, however, we do not consider the delay to be excessive or a result of unexcused inaction by the state. A review of Scott's testimony reveals that she knew nothing of the facts surrounding the offense that would have been useful to either the prosecution or the defense. In fact, the following occurred during her direct testimony:
 "Q: So you really don't know anything about this case, do you?
 "A: I really don't. No more than what I was told the next day."
As further evidence of the non-beneficial nature of Scott's testimony, defense counsel asked her only three general questions. In conclusion, we find that any prejudice resulting from the 19-month delay was minimal.
Considering the four factors of Barker in conjunction with other related circumstances, we find that appellant was not denied his right to a speedy trial and that the trial court acted properly in denying his motion to dismiss.
The judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] Here, we are concerned only with the additional element of "lawfully occupied." A "dwelling-house," however defined, is a "dwelling," as defined by § 13A-7-1(3), and, thus, is not an additional element.
[2] This information comes mainly from the attorneys' assertions in the hearing on appellant's motion. We are at a disadvantage, particularly as to specific dates, because the case action summary sheet has no entry prior to January 5, 1989, the date of appellant's arraignment, and the next entry is the entry of the jury's verdict.