BOWEN, Presiding Judge.
Wallace Robert Clopton, the appellant, was convicted of the unlawful distribution of cocaine and was sentenced to ten years’ imprisonment. He raises four issues on this direct appeal from that conviction.
I
The appellant contends that his motion to dismiss should have been granted because of the allegedly excessive delay in bringing him to trial.
The facts stated chronologically are as follows:
January 16, 1988: Informant Jennifer Dillon working with Baldwin County and Gulf Shores law enforcement officials made a controlled purchase of cocaine from the appellant.
November k, 1988: The appellant was indicted for the unlawful distribution of cocaine.
October 9, 1991: The appellant was arrested and placed in jail on the indictment.
October 21h 1991: The appellant filed a motion to dismiss, arguing that he had been denied his right to a speedy trial. In this motion, the appellant alleged that the indictment “was not issued or served upon your Defendant herein until September of 1991.” C.R. 10. The appellant claimed no prejudice due to the delay in this motion.
November 3, 1991: Motion to dismiss denied.
November 15, 1991: The appellant entered a plea of not guilty and waived arraignment.
November 21, 1991: The appellant filed a motion for reconsideration of his motion to dismiss. He made no allegations of prejudice in this motion.
November 25, 1991: The State filed a “response in opposition to motion for reconsideration,” alleging that the “defendant was extradited from Florida and upon his booking in the Baldwin County Jail gave a Pensacola, Florida, residence address.” C.R. 15.
December 5, 1991: Motion for reconsideration is denied.
December 13, 1991: The trial court set the appellant’s case for trial during the March 9, 1992, term of criminal court.
March 18, 1992: A hearing was held on the motion to dismiss. The appellant alleged that the lapse of time and the loss of potential witnesses and memory had greatly prejudiced his ability to present a defense. The appellant testified that he had been available and that his location and *1241 whereabouts were easily ascertainable by law enforcement during the period of the delay. The State presented testimony that some efforts had been made to locate the appellant.
At the conclusion of this hearing, the trial judge stated: “I’m going to continue the case from the trial term. I want proof positive, if it exists, [that] Mr. Clopton, in fact, filed a State tax return. I also want any — from the sheriff — any further efforts that were made to find him. It doesn’t seem to be much dispute he was arrested by Customs, and Officer Byars had to go get him in Georgia.... [I]t appears the Defendant may have a real plethora of addresses. It appears it may have been a paucity of effort on the Sheriff’s department to find him. I want to see a copy of or proof that he [the appellant] filed State tax returns in any of the years ’89 or ’90 [as the appellant had testified he did].” RR. 36-37. Those returns would corroborate the appellant’s testimony that he was living and working in the Baldwin County community. Neither the appellant nor the sheriffs office supplied the information requested by the trial court.
March 20, 1992: The case was continued and reset for trial. The appellant made no objection.
September 11, 1992: The case was again continued and reset for trial. The appellant made no objection.
September 25, 1992: The State filed a “notice of priority” stating that “the age of this case and the gravity of the offense dictate that priority should be given in scheduling of this case for trial.” C.R. 18.
November 9, 1992: The case was continued and reset for trial. The appellant made no objection.
January S, 1998: The case was continued and reset for trial. The appellant made no objection.
March 10, 1998: The appellant’s renewed motion to dismiss was denied. Apparently this was an oral motion made at the beginning of trial. R. 10-11.
March 10, 1998: The appellant was tried and convicted.
Applying the test enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we hold that the appellant’s constitutional right to a speedy trial was not violated under these circumstances.
The delay in this case of over four years — from November 1988 until March 1993 — is presumptively prejudicial and sufficient to trigger an examination of the three remaining factors of the Barker test.
Asia Ex parte Carrell, 565 So.2d 104, 108 (Ala.1990), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), the reason for the delay in this case was “the failure of the State to serve the arrest warrant on the defendant.” Almost three years passed between the time the appellant was indicted and the time he was arrested and served with the indictment.
Gulf Shores police officer Steve Stewart testified that in January of 1988 he tried to determine the appellant’s “physical address but everything we was coming up with was post office box addresses.” RR. 33. The appellant admitted that during the relevant time period, he had three different post office boxes: one in Orange Beach, one in Foley, and one in Gulf Shores. RR. 20-21. In contrast to the situation in Goodson v. State, 539 So.2d 1112, 1114 (Ala.Cr.App.1988), where there was “no evidence that [the accused’s] location was anywhere other than his permanent address,” here the appellant testified that from October 1988 to January 1991 he resided with his girlfriend at two different Orange Beach apartments or condominiums and that both of those addresses and the accompanying telephone listings were in his girlfriend’s name. RR. 21-22.
Law enforcement authorities had reason to believe that the appellant was residing in Florida because the informant to whom the appellant allegedly sold cocaine told the police that “her information was that ... [the appellant] was living in Florida, but she didn’t know exactly where.” RR. 35. Officer Stewart testified that he used the “NCIC computer” to check an address for the appellant in Florida, but the appellant had not lived at that address for twenty years. After the appellant was indicted, Officer Stewart *1242 was not involved in any efforts to locate him because locating the appellant was the responsibility of the sheriffs department. RR. 36. When the appellant was finally arrested, he gave a Pensacola, Florida, address. RR. 25-26.
In contrast to the situation in Ex •parte Carrell, supra, where the accused had been employed at the same place for 18 years and had been previously arrested at his place of employment, the evidence in this case established that the appellant had no regular or continuous place of employment. The appellant testified that he worked for a Baldwin County construction company in 1988, but he admitted that after that time he had “been just jumping, picking up work wherever” he could as a construction worker or as a self-employed boat captain. RR. 28.
The appellant argues that the State should not be heard to claim that it made a good faith effort to notify him of the charges and to arrest him on the outstanding warrant because, during this same time period, he was divorced in Baldwin County and he received vehicle and tag registration notices from Baldwin County authorities. Thus, he maintains, if county law enforcement authorities had tried to find him, they would have been successful. This argument overlooks the fact that notices mailed by other county officials to the appellant’s post office box would, no doubt, come to his attention eventually even if he were not physically residing in the county, whereas the appellant’s physical presence was required for a custodial arrest. One cannot be arrested via a post office box.
In light of all the circumstances, especially the fact that the appellant had no residence address listed in his name and had no continuous and regular place of employment, we believe the State’s delay in arresting him is a neutral factor in the Barker calculus. Compare United States v. Koskotas, 888 F.2d 254, 256 (2d Cir.1989) (seven-year delay between indictment and arrest of prominent financier and public figure did not indicate lack of due diligence).
The almost three-year delay between the indictment and the arrest in this case resulted in little or no prejudice to the appellant. The appellant first asserted his right to a speedy trial in October 1991, when he requested a dismissal of his case. He again sought dismissal in March 1992 and on the day of trial in March 1993. However, the appellant made no objection to the numerous continuances granted in this case (March 1992, September 1992, November 1992, and January 1993).
The appellant’s sole claim of prejudice was that, due to the time lapse between the alleged offense and the trial of this case, his memory had faded and he was unable to locate witnesses who might have accounted for his whereabouts on the date of the offense. “[Ojrdinarily a mere assertion of a loss of memory is not enough of a showing of prejudice to support a finding that a defendant has been denied due process [unless] the delay is excessive and is the result of unexeused inaction by the State.” Ex parte Carrell, 565 So.2d at 108, quoted in Scott v. State, 570 So.2d 813, 818 (Ala.Cr.App.1990). Under the circumstances, the delay in this case was neither excessive nor unexcused. Compare Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (wherein a majority of the Supreme Court held that an 8íé-year delay between indictment and arrest served to relieve defendant of the burden of showing particularized prejudice).
II
The appellant argues that the prosecution did not prove a prima facie case of unlawful distribution of cocaine because the State never introduced the actual cocaine he was alleged to have sold.
Forensic drug chemist Debbie Sennett identified State’s exhibit one as the envelope whose contents she analyzed and found to contain 3.27 grams of cocaine. The prosecution accounted for the contents of the envelope from the time it left the appellant’s possession until it was received and chemically tested by Ms. Sennett. There is no requirement that in order to establish a prima facie case the State must introduce the actual controlled substance. See Congo v. State, 409 So.2d 475, 479 (Ala.Cr.App.1981), cert. *1243 denied, 412 So.2d 276 (Ala.1982) (wherein the court observed that often the contraband is altered or consumed during the testing process). Here, the State established a prima facie case without the admission of the cocaine. See Buice v. State, 575 So.2d 1222, 1224 (Ala.Cr.App.1990) (prosecution presented a prima facie case via testimony of undercover agent who bought substance from accused and forensic expert who determined that substance was contraband).
III
The prosecutor did not violate Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987), in striking the jury. He gave race-neutral reasons for his peremptory strikes of jurors 77 and 86, the only two black members of the venire.
The prosecutor struck juror number 77 because she failed to respond to a voir dire question as to whether any juror had a close friend or a family member who had been arrested on alcohol or drug charges. When questioned further, however, this juror acknowledged that her half-brother was currently facing drug charges in Baldwin County. See Williams v. State, 611 So.2d 1119, 1122 (Ala.Cr.App.1992); Childers v. State, 607 So.2d 350, 352 (Ala.Cr.App.1992), reversed on other grounds, 640 So.2d 16 (Ala. 1994).
The prosecutor struck juror number 86 because she was a client or a former client of defense counsel. See Roberts v. State, 627 So.2d 1114 (Ala.Cr.App.1993); Thomas v. State, 611 So.2d 416, 418 (Ala.Cr.App.), cert. denied, 611 So.2d 420 (Ala.1992); Williams v. State, 548 So.2d 501, 504-06 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989).
IV
Jennifer Dillon, the confidential informant who bought cocaine from the appellant on January 16, 1988, testified that prior to her buy from the appellant she had observed the appellant sell cocaine to other persons. At trial, the appellant objected to this testimony on the ground that Ms. Dillon “is not a chemist or otherwise qualified. She is not competent to testify as to what she speculates or guesses that she has seen or may have seen [the appellant] do_” R. 76.
Before a witness is competent to testify that a substance is contraband, the proponent of the witness must lay a foundation that the witness is qualified “from study, practice, experience or observation” to recognize the controlled substance. See Fleming v. State, 470 So.2d 1343, 1347 (Ala.Cr.App.), cert. denied, 474 U.S. 857, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985); Jenkins v. State, 46 Ala.App. 719, 722, 248 So.2d 758, 760 (1971).
The prosecution should have laid a more complete predicate for Ms. Dillon’s testimony. However, we do not believe that the State’s failure to meet the technical requirements for laying a foundation warrants a reversal in this case. The jury was made aware that, at the time of the buy in this case, Ms. Dillon herself had a “drug abuse” problem. R. 74. Therefore, we think the jury could infer that Ms. Dillon was qualified by experience and observation to recognize drug transactions and to identify certain controlled substances. “The predicate is addressed to sound judicial discretion so as to lead to the conclusion that the witness knows more than an ordinary witness about the field.” Jenkins v. State, 46 Ala.App. at 722, 248 So.2d at 760.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.