The appellant, Terry Allen Wheat, was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975, by a Jefferson County grand jury in October 1983. He was not arrested until nearly 10 years later, May 5, 1993, in Calhoun, Georgia. Wheat waived extradition and returned to Alabama. On June 16, 1993, he made a motion to dismiss the indictment because, he said, he had been denied a speedy trial. The trial court denied the motion, and on December 9, 1993, Wheat entered a "best interest" plea to the murder charge. He also reserved his right to appeal the denial of his speedy trial claim. The trial court accepted the plea and sentenced Wheat to 10 years in prison.
The only issue Wheat raises on appeal is whether the trial court erred in denying his motion to dismiss the indictment for lack of a speedy trial. The record in this case shows the following. During Wheat's plea hearing the prosecutor recited what he believed the evidence would have shown. He said that on June 28, 1983, Jock Harkins's body was found in the 15th Street North block of Morris Avenue. During their investigation, police questioned a man named Louis Mack Ott, who implicated Wheat in the murder, said the prosecutor. Ott was convicted of murdering Harkins.
Physical evidence at the crime scene included fingerprints on a wine bottle and on a train's boxcar. The fingerprints were identified as belonging to Harkins, Ott and Wheat, the prosecutor said. A man told police that shortly after the killing, he had seen Wheat at a restaurant and that Wheat wanted to "bum a drink off him," the prosecutor said. *Page 1220 
When the man told Wheat he was not going to buy him a drink, the prosecutor related, Wheat said in a bragging manner that, "You don't know who I am, I killed a man down by the railroad yard a few days ago by beating his head against a boxcar." The prosecutor said the man picked Wheat out of a police photographic line up, and then shortly before the hearing, the man again picked Wheat out of a photographic lineup.
A Jefferson County grand jury indicted Wheat for Harkins's murder in October 1983. Wheat testified that he was not aware of the indictment until he was arrested in May 1993 in Calhoun, Georgia, under the name of Richard Wheat. He had been living in Calhoun since 1987. Prior to that, he said he had been living in Lubbock, Texas. Wheat testified that after October 1983, the date of the indictment against him, he was arrested in Lubbock on a child abuse charge, and was arrested in Calhoun six times, three of which were traffic offenses. He said his name was run through the National Crime Information Computer, (NCIC), on each of those charges and the murder charge never came up. In connection with the Lubbock child abuse case, Wheat said, the FBI also checked its files for his name as a possible sex offender, and the murder charge did not appear in that check. However, he conceded that the name that police ran through NCIC and FBI files was Richard Wheat, not Terry Allen Wheat. Wheat explained that Richard Wheat is his real name, and that he was using Terry Allen Wheat as an alias during the time he was getting divorced. When he was arrested for murder in this case, Wheat said, he was using the name Richard Wheat.
The Sixth Amendment to the United States Constitution guarantees defendants the right to speedy trials. Traditionally, the right to a speedy trial was designed to minimize "undue and oppressive incarceration," and "anxiety and concern accompanying public accusation." United States v.Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468
(1971). Neither of those concerns are present in the instant case. Although he was indicted in October 1983, Wheat was not arrested until May 5, 1993. He entered his best interest plea seven months later, on December 9, 1993. Therefore, there was no undue or oppressive incarceration in this case. Further, Wheat claims he was not aware of the indictment until he was arrested. Thus, without knowledge of the accusation against him, Wheat could not have been experiencing anxiety over a public accusation.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), the Supreme Court said that preventing the impairment of the defense was the most important interest protected by the speedy trial guarantee. That interest is at issue in this case. The Court in Barker set out the criteria to be used in assessing a speedy trial claim: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker,407 U.S. at 530, 92 S.Ct. at 2192.
To trigger a speedy trial analysis, the defendant first must show that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Doggett v. United States, 505 U.S. 647,112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The indictment triggers the running of time to be calculated for purposes of a speedy trial analysis. Smelley v. State, 564 So.2d 74
(Ala.Crim.App. 1990). Wheat was indicted in October 1983, he was arrested in May 1993, and he entered his best interest plea on December 9, 1993. The length of delay between indictment and trial in this case was 10 years and two months.
In Doggett, the Court called the eight and one-half years between the defendant's indictment and arrest an "extraordinary lag," and noted that usually, courts have found a postaccusation delay "presumptively prejudicial" if it at least approaches one year. Doggett, 505 U.S. at 652, n. 1,112 S.Ct. at 2691, n. 1. Ten years is an extraordinarily long time between indictment and trial, and meets the "presumptively prejudicial" threshold. Therefore, we continue with our analysis.
The second consideration for a speedy trial claim is the reason for the delay, and whether the government or the defendant is more to blame for the delay. Wheat, of course, *Page 1221 
argues that the State is to blame for the delay, in that if the State had pursued his case with due diligence, it could have found him and arrested him on the charge years earlier, especially since his name was checked through NCIC or the FBI seven times. He also points out that the State presented no evidence Wheat was aware of the indictment until his arrest. Further, he says, there is no evidence that he was using an alias to evade being captured by the State.
There also is no evidence of what steps, if any, the State took in pursuing Wheat. The prosecutor did note, however, that since the murder, Wheat had been living out-of-state and using a name different from the one by which he was known in Alabama. During the hearing on this matter, the trial court recognized, "We have had a multiagency task force sworn in for purposes — deputized for purposes of ferreting out many of these old cases, you know, where the people have not been able to locate people, FBI agents have been helping the sheriff's office. I suspect this man fell into that."
While from the record before us we cannot say that Wheat bears the blame for the delay, neither can we say that the State intentionally or deliberately caused the delay in bringing Wheat to trial. See Scott v. State, 570 So.2d 813, 817
(Ala.Crim.App. 1990). It appears to us that the State's failure to find Wheat can "at most, be labeled 'negligent inaction,' which is considered a neutral reason for delay and is to be weighed less heavily against the State than deliberate delay." Scott v. State, 570 So.2d at 817.
The third consideration is the defendant's invocation of his right to a speedy trial. Once again, Wheat contends he was not aware of the indictment against him until his arrest in May 1993. Nothing in the record refutes that assertion. On June 16, 1993, Wheat moved to have the indictment dismissed on speedy trial grounds. With no evidence that Wheat was aware of the indictment until May 1993, we hold that Wheat timely asserted his right to a speedy trial.
The final consideration is whether Wheat was prejudiced by the delay. Wheat asserts that he has been prejudiced because in the years between his indictment and trial, Louis Mack Ott, who also was convicted of murder for Harkins's death, died. Wheat contends that Ott could exonerate him of Harkins's murder. The prosecution believed Ott would help their case against Wheat. As Wheat points out in his brief to this court, both positions must be viewed as speculative because neither side proffered investigative notes concerning interviews with Ott. Because of the speculative nature of what Ott's testimony would have been, his death must be considered as too weak a reason for us to determine that Wheat's case has been prejudiced by the delay.See, Kimberly v. State, 501 So.2d 534, 537
(Ala.Crim.App. 1986). With the exception of Ott, Wheat did not suggest any other ways in which he might have been prejudiced by the delay.
In Doggett, the Supreme Court argued:,
 "[C]onsideration of prejudice is not limited to the specifically demonstrable, . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim. . . . [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.' . . . And though time can tilt the case against either side, [citations omitted] one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay."
Doggett v. United States, 505 U.S. at 655-56,112 S.Ct. at 2692-93 (citation omitted). One of the relevant facts that should be considered is the nature and character of the crime committed. Granted, a 10-year delay makes trying this case more difficult for both the defendant and the State. However, the public has a strong interest in seeing that cases involving serious felonies, such as murder, *Page 1222 
are brought to fruition regardless of how long it takes. The Alabama Legislature recognized this interest in its decision that there would be no statute of limitation in cases of murder. § 15-3-5(a)(3), Code of Alabama 1975. In this case, had the indictment not been returned against Wheat until 10 years after the murder, and then he had been immediately found and arrested, he would have to stand trial on the same evidence the State has against him now.
After reviewing the record in this case, considering the evidence against Wheat, and other relevant factors, we do not believe that the delay in this case was so prejudicial against Wheat that he was denied the opportunity for a fair trial.
After carefully balancing the four considerations set out inBarker, we find that Wheat was not denied his right to a speedy trial, and the trial court did not err in denying his motion to dismiss the indictment for lack of a speedy trial.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., concurs in the result only.