We have granted certiorari review of a judgment of the Alabama Court of Criminal Appeals affirming Wallace Robert Clopton's conviction for unlawful distribution of a controlled substance, a violation of Ala. Code 1975, § 13A-12-211(a). SeeClopton v. State, 656 So.2d 1239 (Ala.Crim.App. 1993). That court determined, in pertinent part, that a delay in bringing Clopton to trial had not violated Clopton's right to a speedy trial under the Sixth Amendment to the United States Constitution, and, therefore, that the trial court had not erred in denying Clopton's motion to dismiss, which had asserted that ground. Clopton argues that the Court of Criminal appeals erred, because, he says, the approximately three-year period between the indictment and his arrest on the indictment, i.e., service of notice of the indictment, caused his trial to be unconstitutionally delayed.
The facts underlying this matter are as follows:
In January 1988, Jennifer Dillon, who had mutual acquaintances with Clopton, agreed to cooperate with law enforcement officials by buying cocaine from Clopton, while she and Clopton were under surveillance. Dillon, who did not know where else to locate Clopton, went to the Flora-Bama lounge, which is located in Florida, just across the state line from Baldwin County, Alabama. There, Dillon found Clopton, and he agreed to sell her cocaine. Dillon then lured Clopton from the Flora-Bama into Baldwin County, where Clopton sold her one-eighth of an ounce of cocaine as, by prearrangement with Dillon, a Baldwin County Sheriff's Department investigator, A.D. Long, and a Gulf Shores police officer, Steve Stewart, observed the transaction.
Clopton was not arrested at the time. It is undisputed that Clopton did not thereafter evade arrest, and that he was unaware that a Baldwin County grand jury had indicted him on November 4, 1988, in pertinent part, for the unlawful distribution of a controlled substance. Additionally, Clopton was unaware that a capias warrant had been issued for his arrest on the day of the indictment.
Dillon believed that Clopton lived in Florida. Based on that information, months before the indictment Officer Stewart had *Page 1245 
" 'used the NCIC computer' to check an address for [Clopton] in Florida." Clopton, 656 So.2d at 1241. Officer Stewart did not find a current physical address for Clopton, but determined that Clopton had post office boxes in Baldwin County. Officer Stewart then abandoned efforts to locate Clopton. The record reveals no subsequent attempts by the State to locate Clopton.
In late 1991, as Clopton was returning from a foreign vacation, customs officials discovered the outstanding capias warrant from November 1988 and detained Clopton for arrest. The capias warrant was executed by the Baldwin County Sheriff's Department on October 9, 1991.
On October 24, 1991, Clopton filed a motion to dismiss this case on the ground that the State's delay in his arrest had violated his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. That motion was summarily denied, and was reasserted by Clopton on November 21, 1991.[1] The trial court held a hearing on the motion to dismiss on March 19, 1992. At that hearing, Clopton indicated that during the delay he had had a memory loss that prejudiced his ability to defend himself at a trial of this case. He indicated that because of the delay he had no recollection as to events that might be relevant at trial or as to the identity of any potential defense witnesses as to relevant events in 1988.
The factors to be considered in determining whether a delay violates the right to a speedy trial are "1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right to a speedy trial, and 4) prejudice to the defendant resulting from the delay." Ex parte Carrell,565 So.2d 104, 105 (Ala. 1990), cert. denied, 498 U.S. 1040,111 S.Ct. 712, 112 L.Ed.2d 701 (1991). A single factor is not necessarily determinative, because this is a "balancing test, in which the conduct of both the prosecution and the defense are weighed." Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972).
The State does not dispute that factors one and three weigh in Clopton's favor.[2] The parties disagree as to whether factor two, "the reason for the delay," and factor four, "prejudice to the defendant," weigh in Clopton's favor.
As to "reason for the delay," Clopton argues that unexcused inaction on the part of the State caused it to delay in arresting him. The Court of Criminal Appeals suggested that the State's inaction should not be weighed against it, because, with due diligence, the State probably could not have found Clopton. The court discussed Officer Stewart's unsuccessful pre-indictment efforts to locate Clopton,[3] and emphasized that Clopton had no residence address listed in his name and had had no continuous and regular place of employment.
This case is analogous to Ex parte Carrell, where the State delayed for approximately two years in serving an arrest warrant on a 1985 indictment. In that case, as here, the defendant was not evading arrest. After the indictment in that case, sheriff's deputies sought to locate the defendant at the address stated on the arrest warrant. As here, law enforcement personnel determined that they did not have a correct physical address for the defendant, and the State made no efforts to otherwise locate the defendant. 565 So.2d at 104. In particular, the Court in Carrell emphasized that the State had made no efforts to locate the defendant at his place of employment, although the sheriff's department had arrested the defendant at that place of employment a few years earlier. This Court determined, in pertinent part, that the State had not been diligent in its *Page 1246 
efforts to locate the defendant and held that the defendant's right to a speedy trial had been violated.
In the present case, a cursory attempt was made to locate Clopton's residence, but no other avenues for locating Clopton were pursued. However, here, unlike in Carrell, the State made no efforts whatever to locate Clopton after the indictment — the return of the indictment being the event in this case that triggered Clopton's right to a speedy trial. See Carrell, 565 So.2d at 107.
As to where Clopton could have been found, just before and after the indictment, the record contains unrefuted evidence of the following:
Between 1988 and 1990, Clopton frequented the Flora-Bama. That Clopton frequented the Flora-Bama was known to the officers involved in the drug transaction and was known to Dillon. In fact, Dillon, who was working with these officers and who was under their observation, went to the Flora-Bama and located Clopton there to arrange the drug transaction.
Frequently, law enforcement officers from Baldwin County "were in and out" of the Flora-Bama, and Clopton was sufficiently acquainted with two such officers that he would speak to them when they came through. The State did not refute, or object to, Clopton's testimony that Baldwin County law enforcement officials "could've asked anybody there [at the Flora-Bama] where to look," and, by so asking, could have located him "without any problem."
Sometime around 1989 or 1990, Clopton was in a vehicle that was stopped in Baldwin County and searched by Orange Beach police. Police "ran" Clopton's driver's license, and let him go. In 1990, Clopton was involved in a motor vehicle accident that was investigated by the Baldwin County Sheriff's Department. In early 1991, Clopton was stopped by Florida Highway Patrol officers and ticketed for a moving violation. They did not "find any warrants" when they "ran [Clopton's] name."
It is true that, as the Court of Criminal Appeals stated, Clopton could not have been arrested through a post office box. That court also emphasized that Clopton did not have a residence in his name during the time in issue,[4] and that, rather than having a continuous or regular place of employment, Clopton worked as a construction worker and as a self-employed boat captain, picking up jobs as he could find them. However, to emphasize that is to suggest that the State was absolved of any duty to try to locate Clopton unless a residence address was listed in his name or he had a continuous or regular place of employment. That suggestion overlooks for example, that another obvious avenue existed for locating Clopton — seeking him out at the Flora-Bama and either arresting him there with the aid of Florida authorities, or setting him up to get him back into Alabama, as had been done for the drug buy.
Moreover, during the relevant period, Clopton actually encountered law enforcement officers from Baldwin County at the Flora-Bama, was involved in an accident that was investigated by the Baldwin County Sheriff's Department, and was twice stopped by other law enforcement officials. That Clopton could not have been found through good faith efforts by the State is flatly contradicted by the fact that he was effectively "found" on several occasions.
In short, the record plainly reveals that the failure to arrest Clopton was not the fault of Clopton's choice of living arrangements or jobs, but was the fault of a lack of either communication or effort on the part of the State.
Based on the foregoing, we hold that the delay in this case resulted from negligence — that it resulted from unexcused inaction — and, "although negligence is not weighed as heavily against the State as deliberate delay, it nevertheless must be weighed against the State." Carrell, 565 So.2d at 108. *Page 1247 
As indicated, the State does not dispute that two of the other factors to be weighed on "speedy trial" questions favor Clopton. Thus, the effect of our holding as to the "reason for the delay" factor, is that three of the four applicable factors weigh against the State. This brings us to the remaining factor to be considered, "prejudice caused by the delay."
The State argues that Clopton's testimony that he was prejudiced by a loss of memory is legally inadequate to show that he was prejudiced by the State's delay. However, in so arguing, the State assumes that the delay in this case was excused. As indicated, we disagree with this proposition. Further, where a delay is excessive and, as here, it "is the result of unexcused inaction by the State, the delay isprima facie, prejudicial." Id.
Based on the foregoing, we hold that the Court of Criminal Appeals erred in affirming the trial court's ruling on the "speedy trial" question, and that the charge against Clopton must be dismissed because of the State's unconstitutional delay in prosecuting.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and HOUSTON, COOK and BUTTS, JJ., concur.
[1] The Court of Criminal Appeals suggested, but did not address, questions whether these motions were adequate to preserve the "speedy trial" issue for review. The State raises no issues in this regard.
[2] The State specifically concedes that the delay between the time of the indictment and Clopton's notice of the indictment was excessive.
[3] As indicated, the pre-indictment efforts to locate Clopton consisted of Officer Stewart's action to access NCIC computer records, and looking for an address in Florida. Officer Stewart did not determine a correct physical address for Clopton and, before the indictment, abandoned efforts to locate Clopton.
[4] From October 1988 to October 1989, Clopton lived in Orange Beach at Wolf Bay Landing Apartments. In 1989 he moved to Island Dunes Condominiums in Orange Beach, which was owned by the company that owned Wolf Bay Landing Apartments. Neither of these residences was in Clopton's name. In early 1991, Clopton moved to Pensacola, Florida.
 *Page 45